# Riddle and Wife *versus* Hall.

1. An agreement in consideration of stifling or compounding a criminal prosecution or proceeding for a felony or misdemeanor of a public nature is void.

2. Where a mortgage is executed with an understanding by the parties that a part of the consideration thereof is that certain criminal proceedings shall be stopped, the agreement vitiates the mortgage, and this irrespective of the question whether the criminal proceedings are stopped or prosecuted to judgment.

3. Where a mortgage is executed without any express agreement on the part of the mortgagee that in consideration thereof criminal proceedings shall not be instituted, and yet there are allegations and representations in relation to such criminal proceedings made by the mortgagee which are intended to and actually do deceive the mortgagor, and in consequence said mortgagor, relying on said mortgagee's statement that no criminal proceedings will be instituted, executes the mortgage, the subsequent institution of such proceedings will relieve the said mortgagor from liability.

4. A. was the president of an unincorporated savings bank, whereof his son B. was cashier. Both A. and B. were guilty of embezzlement of the bank's funds, whereupon on complaint of the directors an indictment was found against B. and criminal proceedings also threatened against A. At a meeting of the stockholders to raise a fund for the payment of depositors and creditors, C., another son of A., subscribed $4,000 himself, and $2,000 on behalf of his mother D., without the latter's authority. These subscriptions C. made at the request of E., a director of the bank, who stated that he believed and was satisfied it would stop the prosecutions against A. and B., if C. could get his mother, D., to pay the sums subscribed. C. having subsequently notified D. of his subscription on her behalf, D. said she would agree to it if it would stop the prosecutions. E. subsequently called upon D. to induce her to execute a mortgage to him for $6,000. D. stated that she would not sign the mortgage till the criminal matters were fixed np. E. replied that if she signed it he firmly believed it would settle the whole criminal business, and if she did not it would be the worst thing she ever did. D. then signed the mortgage with the understanding that the bank would not appear against her son B. or prosecute her husband A. If she had not so understood she testified that she would not have executed the mortgage. Afterwards a nolle prosequi was entered in the prosecution against B. and on complaint of the bank an indictment was found against A. and B., for conspiracy, on which they were tried, convicted and sentenced. The mortgage being subsequently assigned by E. to the trustee of the bank, a scire facias was

[Riddle v. Hall.]

issued thereon against D.  *Held*, that it was for the jury to say whether an agreement to desist from the criminal prosecutions did not constitute part of the consideration of the mortgage, in which event the mortgage would be vitiated because based on an illegal consideration.  *Held*, further, even if this were not the case, that it was for the jury to say whether the plaintiff had not induced the defendant to execute the mortgage by representing that the criminal prosecutions would not be pushed, in which event the actual pushing of such prosecutions would relieve the defendant from liability.  *Held*, further, that under the circumstances the assignee of the mortgage occupied no higher ground than the assignor.

5.  Where an assignment is made by an unincorporated society to a trustee in trust to pay all its creditors, it is not necessary for the trustee in suing out a mortgage belonging to the assigned estate to prove that there are creditors of the society who are unpaid.

6.  The defendant in the case above set forth requested the court to charge that if she executed the mortgage under moral constraint, being influenced by the language used by E., she was not bound by her act.  The court refused so to charge.  *Held*, that under the circumstances this was not error.

November 4th 1881.  Before Sharswood, C. J., Mercur, Gordon, Trunkey, Sterrett and Green, JJ.  Paxson, J., absent.

Error to the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term 1881, No. 274.

Scire facias sur mortgage, by James W. Hall, for use of D. MacFerron, trustee of the Franklin Savings Bank, an unincorporated partnership association, against George R. Riddle and Mary A. Riddle, his wife.  The mortgage in suit was given by the said defendants on real estate of the wife, to secure the husband's bond.  Plea, payment with leave, etc.

On the trial, before Bailey, J., the defendant, Mary A. Riddle, alleged that the mortgage was procured from her by undue influence and duress per minas, exercised by the plaintiff, Hall, and others, composing a committee of the said Franklin Savings Bank, the use plaintiff ; further, that the mortgage was invalid because given solely for the illegal consideration of suppressing a criminal prosecution then pending against her son, and a similar prosecution threatened against her husband, for embezzlement and misuse of the funds of said Savings Bank, of which her husband was president and her son cashier.  The facts, as developed on the trial, are recited in the foregoing syllabus, and more fully in the opinion of the court.

The defendants presented the following points :

1.  If the jury believe from the evidence that the defendant, Mrs. Riddle, refused to execute the mortgage in suit unless a then pending prosecution against her son, James H. Riddle, for embezzlement, were withdrawn, and a threatened prosecution of

her husband for the same, or a like offence, avoided; that she so stated to James W. Hall, the plaintiff, and Dr. Mowry, her intimate friends and a committee from plaintiff partnership to get a mortgage from her, and was then assured by them that it was their belief that if she executed said mortgage all said prosecutions pending and threatened would be avoided; that, relying on that statement, she executed said mortgage for the purpose of avoiding said prosecutions; and if the jury, furthermore, believe the defendant's evidence, that she was frightened by the statement made to her by Mr. Hall at the same time (if he did make it), that "if she refused to execute said mortgage it would be the worst thing that she had ever done in her life," or something to the same effect, then their verdict should be for the defendant. *Refused*. (Second assignment of error.)

2. The evidence in the case being uncontradicted, that the purpose for which the plaintiff secured the mortgage in suit was to pay creditors of the plaintiff partnership, and there being no evidence that any creditors of said partnership remain unpaid, the plaintiff cannot recover. *Refused*. (Third assignment.)

3. If the jury believe from the evidence that Mrs. Riddle executed the mortgage in suit under moral constraint, and influenced thereto by fright, resulting from language used to her by the committee of plaintiff partnership, who came to her to secure from her said mortgage, then she is not bound by said act, and the verdict should be for the defendants. *Refused*. (Fourth assignment.)

The plaintiff presented this point:

Under all the evidence in the case the verdict must be for the plaintiff, for full amount of the debt unpaid, to wit, $5,300, with interest thereon from June 3d 1879, to date. *Affirmed*. (Fifth assignment.)

The court charged the jury as follows: "Without occupying your time to tell you what my views are as to this case, except the conclusion which I have reached, I will say that I refuse the three points presented, as drawn, of the defendants, and affirm the point of the plaintiff, 'that under all the evidence in the case the verdict must be for the plaintiff for the full amount of the debt remaining unpaid, to wit, $5,300, with interest thereon from June 3d 1879, to date.'" (Sixth assignment.)

Verdict, accordingly, for the plaintiff for $5,904.20, and judgment thereon. The defendants took this writ of error, assigning for error, inter alia, the answers to the above points and the charge of the court.

*Dalzell* and *S. H. Geyer* (*Hampton* with them), for the plaintiffs in error.—There was ample evidence to be submitted

[Riddle *v.* Hall.]

the jury (1) that the mortgage was executed by Mrs. Riddle, under duress per minas, and (2) that its only consideration was to suppress the criminal prosecutions. In either case it was avoided, and the court erred in directing the jury to find for the plaintiff: National Bank *v.* Kirk, 9 Norris 49; Chitty on Contracts 188; Clubb *v.* Hutson, 18 C. B., N. S. 414, and note; Porter *v.* Havens, 37 Barb. 343; Kimbrough *v.* Lane, 15 Am. L. Reg. 289; Partridge *v.* Hood, 120 Mass. 403; Atwood *v.* Fisk, 101 Mass. 363. Even conceding that the understanding between Mrs. Riddle and the plaintiff, Hall, and those who acted with him, fell short of an actual contract to suppress the criminal proceedings, her impression and belief, derived from them, that such would be the result if she executed the mortgage, would warrant the jury in finding for the defendants. The vice of the transaction lies in the corrupt intent, not in its successful accomplishment: Frevall *v.* Fitch, 5 Wharton 331; Porter *v.* Havens, supra. Less than actual duress will avoid the mortgage of a married woman: 2 Greenleaf on Ev. § 301, n; Schrader *v.* Decker, 9 Barr 14; Michener *v.* Cavender, 2 Wright 337; Louden *v.* Blythe, 3 Casey 22; McCandless *v.* Engle, 1 P. F. Smith 309; Griffith *v.* Sitgreaves, 9 Norris 161.

*West McMurray* and *S. Schoyer*, for the defendant in error.—The authorities relied on by plaintiff in error are not disputed, but they only decide that the illegality which will vitiate a contract must, *by agreement*, be the consideration. In the present case no *agreement* to stifle the prosecution was proved. While Messrs. Hall and Mowry told Mrs. Riddle that they were almost certain the bank officers would not prosecute her son and her husband if she executed the mortgage, they were careful to say that they had no authority to make any agreement, and that they had no control over the prosecution, which was by the Commonwealth, and could not guarantee that the prosecutions would not be pressed. They were her personal friends and advisers, although also acting as a committee for the bank. In order to avoid a contract, on the ground that it was made to compound a crime, the defendant must show, first, the actual commission of the crime, and, secondly, an *agreement* by the plaintiff to refrain from prosecution: Swope *v.* Jefferson Insurance Co., 8 W. N. C. 481. The real consideration of the mortgage was the securing of the prior subscription, which was valid and bona fide, and made before the happening of the alleged representations, fear and oppression. There was no evidence of fear or duress sufficient to rebut the presumption arising from the notarial certificate of acknowledgment by Mrs. Riddle that the execution of the mortgage was her free and voluntary act: Heeter *v.* Glasgow, 29 P. F. Smith 83. The

[Riddle *v*. Hall.]

court, therefore, rightly withdrew the evidence from the jury and directed a verdict: Hyatt *v*. Johnston, 10 Norris 196; Ryder *v*. Wombwell, Law Rep., 4 Exch. 39.

Mr. Justice MERCUR delivered the opinion of the court, January 2d 1882.

*Ex turpi contractu non oritur actio*, is a well-recognized maxim of common law. In this case the claim is to enforce a mortgage executed by husband and wife, against the real estate of the wife. It is undoubted law that a married woman may by joining with her husband make a valid mortgage of her separate estate to secure his debt or that of a third person. Conceding the general power, the defence alleges the turpitude of the consideration, and the undue influence exercised on the wife in procuring the execution of the mortgage. The court, being of the opinion that the evidence was insufficient to submit to the jury, gave them peremptory instructions to find for the plaintiff below.

It is elementary law that an agreement in consideration of stifling or compounding a criminal prosecution or proceedings for a felony or a misdemeanor of a public nature, is void: Chitty on Contracts (ed. 1874) 992. An action will not lie on a bond when part of the consideration is an agreement not to prosecute for malicious mischief: Id. in note citing Cameron *v*. McFarland, 2 Car. Law Rep. 414. So a mortgage given in consideration of an agreement that an indictment found for obtaining mules by false pretences, should be dismissed and the prosecutor not appear, was held void: Kimbrough *v*. Lane, Court of Appeal of Ky. vol. 15, N. S. Amer. Law Reg. 389. It was held in Harris *v*. Carmody, by the Supreme Court of Mass., 113 Mass. 51, that a note and mortgage given by a father to the plaintiff, under threats to prosecute and imprison his son for an alleged forgery of the father's name, may be avoided by the father on the ground of duress. Where any part of the consideration of a promissory note is a promise by the payees to abstain from prosecuting the son of the maker for forgery, the note is void: National Bank of Oxford *v*. Kirk, 9 Norris 49.

The Franklin Savings Bank was not incorporated. Each of the plaintiffs in error, and their two sons James H. Riddle and George D. Riddle were stockholders therein. George R., the husband of Mrs. Riddle, was the president, and James H., her son, was the cashier thereof. Through the improper use of the funds of the bank by these officers, it failed. On complaint of the directors of the bank, an indictment had been found against her son James for embezzlement, and a criminal prosecution was also threatened by them against her husband. A meeting of the stockholders was afterwards held, at which

[Riddle *v.* Hall.]

subscriptions were made to raise a fund for the payment of depositors or creditors of the bank. George D. Riddle at first subscribed $2,000, and afterwards increased it to $4,000. He also subscribed $2,000 in the name of his mother. He testified substantially that his increased subscription, and the one in the name of his mother, were made at the request of Hall, the defendant in error, who was a director of the bank, and on his statement that he believed and was satisfied, it would stop the prosecutions, if the witness would get his mother to pay the sums subscribed. Without authority from his mother he subscribed in her name, with that understanding, and was to so inform her. On his notifying her, she answered, if it would stop the criminal prosecutions, she would agree to it.

Hall and Dr. Mowry were appointed by the bank a committee to call on Mrs. Riddle to induce her to execute the mortgage for the $6,000. George D. accompanied them. He testifies that she said to them that she "would not sign the mortgage until the criminal matters were fixed in black and white;" that Dr. Mowry told her "he was satisfied this would settle the whole criminal trouble," and Hall said, "I firmly believe, if you would sign this mortgage, that it will result in settling all this criminal trouble, and if you do not sign it, it will be the worst thing you ever did." Thereupon she agreed to execute it, and did so the next day. That she agreed to the subscription with the understanding that they would not appear against her son nor prosecute her husband. The evidence of Mrs. Riddle substantially corroborates that of the son; but she states some other facts. She says, while Hall said he would not guarantee that those men would not go on with the prosecution, as he had no right to, yet he was almost certain they would not, and that on his telling her if she did not sign the mortgage it would be the worst thing she ever did, "that frightened me, and I signed it against my own will and judgment." She further testified that she signed it for the purpose of saving her son and her husband, and "would not have signed if she had known the prosecutions were to go on anyhow." She expected the prosecutions would go on if she did not sign, but would not if she did sign.

Hall testified in chief, that at the interview referred to with Mrs. Riddle the matter of the criminal prosecutions was introduced, and that he said to her he thought if the subscriptions made were carried out in good faith, it would end these troubles, although he had no authority from any person to say so. On cross-examination he testified, "We talked about the criminal prosecution, and it was generally including the whole, that all those difficulties, prosecutions, whatever they might be, that they would end." He further told her if she executed

[Riddle *v.* Hall.]

the mortgage or carried out the subscription, that would be the end of the matter. It was proved that after the execution of the mortgage a nolle prosequi was entered in the prosecution against James, and on complaint of the directors of the bank an indictment was found against him and his father, the son and husband of Mrs. Riddle, for conspiracy, on which they were tried, convicted, and sentenced.

Some of the facts narrated are denied by the witnesses of the defendant in error; but the credibility of the witnesses and the weight of the evidence are questions for the jury. The main complaint is that the jury was not permitted to pass on the evidence.

It is an undoubted fact that Mrs. Riddle was induced to give this mortgage on her land to secure the payment of subscriptions for which she was not legally bound to pay anything. There is certainly some evidence that the operative inducement and controlling consideration in her mind were to stop and prevent the prosecutions begun and threatened against her son and her husband. Her confidence and assurance that such would be the effect of giving the mortgage were derived from the two persons who acted as a committee from the bank. To such an extent did Hall assume power and authority to stipulate in regard to all the conditions on which she should give a mortgage that it was given to him. He it was, that she testified, used the strongest assurance that on her giving it, all prosecutions would be stopped, and who frightened her by suggesting alarming consequences if she refused.

A mortgagee is not the purchaser of an estate. He is simply a lien creditor, holding the mortgage as security for the payment of the bond therein recited. This mortgage was assigned by Hall to the trustee of the bank. Although it was originally designed for the benefit of the latter, yet for all purposes of defence connected with the giving of the mortgage, the bank stands on no higher ground than Hall occupied. Not only is he the legal party of record: but when the bank seeks to enforce a contract made by its agent, for its benefit, it is bound by the acts of the agent which affect the validity of the contract in the making thereof: Swope *v.* Jefferson Fire Ins. Co., 8 W. N. C. 481.

If this mortgage was executed in consideration of an agreement to stifle or desist from a criminal prosecution against the husband and son of Mrs. Riddle, or against either of them, or if that was a part of the consideration, it was an illegal consideration which destroys the validity of the mortgage. To constitute a defence on this ground, the agreement must be found. Whether there was such in this case is to be decided by a consideration of all the facts and circumstances given in evidence.

[Riddle *v.* Hall.]

The fact that Mrs. Riddle was under no legal liability to give the mortgage or to pay the debt therein referred to, and the reasons urged by Hall and Mowry to induce her to give it, are proper to consider. The inquiry need not stop with a critical view of the words used by Hall and Mowry; but due regard should be given to the meaning they were intended to convey, and reasonably did convey.

If they used the language stated with the intention of thereby assuring Mrs. Riddle that all criminal proceedings would be stopped if she would give the mortgage, and she, relying on that assurance, and in consideration thereof, did give it, the question is for the jury to find whether that did not enter into and form a part of the agreement under which the mortgage was given: National Bank of Oxford *v.* Kirk, supra. Was or was not it understood by both parties to the mortgage that a part of the consideration was that the criminal proceedings should be stopped? If it was, it matters not whether they were stopped or prosecuted to judgment. The agreement itself vitiated the mortgage as it rested on an illegal consideration.

If, however, neither Hall nor Mowry did agree that no criminal proceeding should be had against either her husband or her son; yet, if their allegations and representations relating thereto were intended to deceive and did deceive Mrs. Riddle, and she, relying on their statements that none would be had, and by reason thereof, did execute the mortgage, the subsequent proceedings against her husband and son released her from its payment.

It was said by Mr. Chief Justice Gibson, in Frevall *v.* Fitch, 5 Whar. 325, "It is an elementary principle that an agreement founded in a false conception is a nullity in respect to the party who misconceived, because he assented to it, not absolutely, but on a condition not verified by the event."

In the present case the rights of no third persons have intervened, so as to exclude any defence Mrs. Riddle may have, arising from the facts and circumstances under which the mortgage was given.

We discover no sufficient reason for rejecting the evidence covered by the first assignment: but substantially it was afterwards received, so no harm resulted from the first rejection. We discover no error in the third assignment; nor, under the evidence, do we see error in refusing to affirm the point covered by the fourth assignment. The fifth and sixth assignments are sustained, and the second so far as the error therein alleged is in conflict with this opinion.

Judgment reversed, and a venire facias de novo awarded.