# Nester et al., Appellants, *v.* Continental Brewing Co. et al.

### [Marked to be reported.]

*Contract in restraint of trade—Combination to prevent competition— Public policy—Brewers.*

Where a number of persons engaged in the same business within the same territory enter into an agreement the object of which is purely and simply to silence and stifle all competition among themselves, the agreement is in restraint of trade, and void as against public policy.

If it appears that such a combination is injurious to the public, the courts will not stop to inquire as to the degree of injury inflicted, nor whether the restraint be general or partial, nor will they consider the form and declared purpose of the combination.

A combination among brewers to prevent competition among themselves in the sale of beer is illegal.

One member of an illegal combination in restraint of trade cannot enforce a claim against the other members of the combination, where his cause of action is based upon the illegal agreement.

In such a case the assignee of the plaintiff stands in no higher right than his assignor, as notice of the character of the combination is in the channel of his title.

Argued Jan. 25, 1894. Appeal, No. 30, Jan. T., 1894, by plaintiffs, Samuel K. Nester et al., from decree of C. P. No. 1, Phila. Co., June T., 1891, No. 947, sustaining demurrer to bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity for account.

The bill set forth: That during June, 1886, defendants all, with one exception, being brewers, in Philadelphia, formed an unincorporated association, called "The Brewers' Association of Philadelphia," under articles of agreement in writing. That on July 22, 1886, the Enterprise Brewing Company, Limited, became a member of said association; that by statements of account rendered monthly to the company, it appeared that from July, 1886, to and including December, 1886, the sum of $14,435.77 was due from the association to the company. That the company, for a valuable consideration, executed and delivered to Samuel K. Nester an assignment, in writing, of the amount which might be due the company from the association on the expiration of the year limited by the agreement, which assignment was delivered to and remains with the association. That on April 4, 1887, "The Enterprise Brewing Company" succeeded to the property, rights and credits of the limited company, including its membership in the association, and was recognized by the association as a member. That by further statements of account, rendered monthly to the company and the corporation, it appeared that from January, 1887, to and including May, 1887, the further sum of $3,387.13 was due from the association. That in March, 1887, the company notified the association in writing of its intention to withdraw from the association on June 30, 1887. That on September 21, 1887, the corporation made an assignment for the benefit of creditors in writing, duly recorded, to Benjamin F. Fisher, Esq., one of the plaintiffs. That by virtue of the aforesaid two assignments, Samuel K. Nester and Benjamin F. Fisher have succeeded to all rights of the said company and corporation. That there was due from the association, as above set forth, a total of $17,822.90, with interest on the respective monthly installments, but the association is entitled to deduct $4,620, and also the share of expenses which should be borne by the company and corporation, the amount of which share is unknown to the plaintiffs; that the whole of the aforesaid sums, with interest, notwithstanding repeated demands for an account and payment, still remain due and owing to plaintiffs. The prayers were: (1) For an account and payment of the amount which shall be ascertained to be due to plaintiffs; (2) other and further relief.

Demurrers were filed by twenty defendants to the whole of the bill. The case was heard on bill and demurrer.  2 Dist. Repts. 177.

The following opinion was filed by BIDDLE, J.:

" The bill of complaint in this case sets out that the defendants became members of ' The Brewers' Association of Philadelphia,' which is an unincorporated association, familiarly known as ' the brewers' pool ' and also as ' the pool; ' that, under the articles of agreement, the defendants became indebted to them in a large amount of money and that they have made repeated demands upon them for an account and for payment of the amount due them under the provisions of the agreement, but the said account and payment have been refused. They therefore pray that an account may be taken, by and under the decree and direction of the court, of all the dealings and transactions of the said The Brewers' Association of Philadelphia, under the aforesaid agreement, for the said term, beginning on July 1, 1886, and ending on June 30, 1887, and that the amounts found due shall be paid over.

" To this demurrers have been filed by several of the defendants, alleging ' 1st, that the plaintiffs have not in and by their said bill shown such facts as would entitle them to the relief prayed for; and, 2d, that the said agreement set out in the said bill and alleged to have been entered into by the said Enterprise Brewing Co., Limited, and the defendants, and which the said plaintiffs seek to enforce, is not such an agreement as a court of equity will enforce, because the same is an agreement against public policy and in restraint of trade.

" The agreement, by the fifth section, provides, that ' the undersigned hereby stipulate and bind themselves one to the other, and do hereby agree, one with the other, not to sell and deliver any beer in the city and county of Philadelphia, and Camden and Camden county, N. J., or which is to be used in the city and county of Philadelphia, Camden and Camden county, N. J., after July 1, 1886, to any new trade or any other brewers' customer or customers that belong to this association, during the continuance of this agreement, at less than eight dollars a barrel.' For the violation of this agreement the severest penalties are then provided. By the 16th article: ' The board of trustees may call the association together from time

to time, and at any such meeting the price at which beer may be sold may be changed by a vote of not less than two thirds of all the members belonging to said association at the time of voting thereon.' These are the only sections to which the demurrer would apply, and which it is necessary to consider at this time.

" [It cannot be gainsaid that the object of this combination is to enable the forty-five brewers of the county of Philadelphia, individuals, firms and corporations, who have entered into it, to regulate and control the sales and prices of beer within the city of Philadelphia and the county of Camden, N. J.] [3]   [It certainly is a combination in restraint of trade, tending to destroy competition and to create a monopoly in an article of daily consumption.] [4]   Is this, therefore, a matter in which a court of equity will interfere?

" It has been strenuously urged and innumerable authorities have been cited to prove that contracts in partial restraint of trade, limited by time and space, have been sustained, and that, inasmuch as this only applies to 1,250,000 of people and the space which they occupy, the agreement is perfectly lawful. While we admit the principle we fail to see that it has any application to this case.

" Where a barber contracts not to open a shop within one square of another for the space of six months, equity would no doubt interfere to prevent its violation.   But, suppose it had been a gambling house or a house of ill fame instead of a barber shop, equity would then refuse to interfere, because these establishments are held to be illegal, and their recognition against public policy.   The question would be there, as here, not a question of time and space, but a question whether equity would take cognizance of such a subject.

" The restriction would rather, in a case of this sort, make the plan more objectionable.   The fact that the city was to be placed in a worse position than all the rest of the state could not certainly be in accordance with any enlightened system of public policy.

" Professor Patterson, in his recent work on ' The Law of Contracts in Restraint of Trade,' after an able and exhaustive examination of all the authorities, says, p. 51 : ' The rule that is deducible from the cases seems to be that restraints on competition and production are valid, provided they be for the

necessary protection of the parties' interests; but combinations between producers to limit production and to enhance prices are opposed to public policy, and are not merely void contracts, but are offences, and punishable as such.' This doctrine is clearly that of our own state: See Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173.

" [That this agreement is a necessary protection of the parties' interests is not averred, and we do not understand is contended.] [7]

" Where a price is fixed arbitrarily for which a manufactured article may be sold, it necessarily limits the production of that article to the amount that can be sold for that price. An increased price put upon an article restricts its sale, and the restricted sale necessarily reduces the production. It is no answer to say we do not restrict your production; you may produce any amount you like, we only restrain your sale of it. Is this not practically a limit to production?

" Where a pool or combination reserves the right to regulate prices they can, by the manipulation of prices, drive their competitors out of business, create a monopoly, and enhance at their pleasure the prices to consumers.

" It is also contended here by the complainants that the consideration is executed, and therefore, in accordance with a line of cases, the illegal nature of the original transaction will not be inquired into. The test, however, as to whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case; if the plaintiff cannot open his case without showing that he has broken the law, a court will not assist him: Swan v. Scott, 11 S. & R. 164; Coal Co. v. Coal Co., supra.

" Now, in this case, the bill itself sets out the agreement, prays that it may be taken as part of the bill, asks for an account, and calls upon a court of equity to enforce it. [It is the very transaction itself complained of as illegal that we are asked to enforce.] [5]

" [Believing this agreement to be against public policy,] [6] we sustain the demurrers and dismiss the bill.

*Errors assigned* were (1) sustaining demurrer; (2) dismissing bill; (3-7) holding as in brackets; quoting them.

*John O. Bowman, Theodore P. Matthews* and *Furman Sheppard* with him, for appellants.—The purpose of the agreement under which the Brewers' Association was formed was to restrain ruinous competition amongst the associates and protect them from the petty exactions of consumers seeking to take advantage of that competition. It was not its purpose to effect a monopoly nor to restrain production nor regulate sales, and it did not attempt to control prices further than was necessary to effect its principal object. The fixing of a uniform price tends to stimulate production, not to restrain it : Central Shade Roller Co. v. Cushman, 143 Mass. 353.

The agreement under which the Brewers' Association was formed does not impose an unreasonable restraint upon trade, nor inflict any injury upon the public, and is therefore not illegal as being against public policy : Swann v. Swann, 21 Fed. R. 301; Baker on Monopolies, 107, 207; Bruce Smith on Liberty and Liberality, 187; Ray, Contractual Limitations, 197; Gompers v. Rochester, 56 Pa. 194; McClurg's Ap., 58 Pa. 51 ; Hall's Ap., 60 Pa. 458; Harkinson's Ap., 78 Pa. 196; Paxson's Ap., 106 Pa. 429 ; Smith's Ap., 113 Pa. 549; Shirley v. Keagy, 126 Pa. 282 ; Raub v. Van Horn, 133 Pa. 573 ; Horner v. Graves, 7 Bing. 743 ; Nav. Co. v. Winsor, 87 U. S. 68 ; People v. Sugar Refining Co., 54 Hun, 354 ; Skrainka v. Scharringhausen, 8 Mo. Ap. 522 ; Collins v. Locke, L. R. 4 Ap. Cas. 674 ; Wickens v. Evans, 3 Young & Jervis, 318 ; Fairbanks v. Leary, 40 Wis. 637 ; Ontario Salt Co. v. Merchants' Salt Co., 18 Grant's Ch. 540 ; Central Shade Roller Co. v. Cushman, 143 Mass. 353 ; U. S. v. Trans-Missouri Freight Association, 53 Fed. R. 440.

The cases in which agreements have been adjudged illegal as against public policy are usually those where the end is accomplished by a wholesale restraint of trade, as in contracts not to manufacture, or not to sell at all, or except by permission of an association, or where members of an association must entirely stop work if so ordered, as in the following cases cited by appellees : Hilton v. Eckersley, 6 E. & B. 66 ; Hornby v. Close, L. R. 2 Q. B. Cas. 153 ; Salt Co. v. Guthrie, 35 Ohio, 666 ; Indian Bagging Association v. Koch, 17 La. Ann. 168; Arnot v. Coal Co., 68 N. Y. 558 ; Clancey v. Salt Mfg. Co., 62 Barb. 395 ; Lumber Co. v. Hayes, 76 Cal. 387; U. S. v. Coal

NESTER et al., Appellants, *v.* BREWING CO. et al. 479

1894.]                        Arguments.

& Coke Co., 46 Fed. R. 432; Craft v. McConoughy, 79 Ill.
346 ; Hooker v. Vandewater, 79 Ill. 346 ; Stanton v. Allen, 5
Denio, 434.

By the operation of the agreement during the year ending
June 30, 1887, a fund accumulated in the hands of certain of
the associates which admittedly belongs to the assignee of the
remaining associates, but the custodians of this fund seek to re-
tain its custody by alleging illegality of the agreement as a
ground for non-intervention by the court.  In such a case
equity will not permit the fund to be locked up forever, but
will compel a settlement according to good conscience, even
with a partner in the alleged illegal transaction ; a fortiori,
with an assignee wholly innocent of participation in or knowl-
edge of the alleged illegalities : Brooks v. Martin, 69 U. S. 70 ;
Harvey v. Varney, 98 Mass. 118 ; Snell v. Dwight, 120 Mass.
9 ; McBlair v. Gibbes, 17 How. 232 ; 1 A. & E. Ency. 836 ;
Fox v. Cash, 11 Pa. 207 ; Lestapies v. Ingraham, 5 Pa. 71 ;
Pollock on Contracts, 349 ; Taylor v. Chester, L. R. 4 Q. B.
Cas. 309 ; Armstrong v. Toler, 11 Wheat. 258 ; Miltenberger
v. Cooke, 18 Wal. 421 ; Davies v. Ins. Co., L. R. 8 Ch. D. 477 ;
1 Pomeroy, Eq. Jurisp. § 403.

*John Dolman* and *Samuel Gustine Thompson, Henry P. Brown,
John K. Valentine* and *Joseph L. Tull* with them, for appellees.—
The contract or agreement in question created a monopoly by
restricting competition and controlling the price of an article
of commerce, and was therefore void at common law as against
public policy : Act of Cong. July 2, 1890, 26 St. at Large,
209 ; Spelling on Trusts and Monopolies, 75 ; Patterson on
Contracts in Restraint of Trade, 51 ; Morris Run Coal Co. v.
Barclay Coal Co., 68 Pa. 173 ; Mitchell v. Reynolds, 2 P. Wms.
181 ; Horner v. Graves, 7 Bing. 743 ; Scranton Electric Light
and Heat Co.'s Ap., 122 Pa. 154 ; More v. Bennett, 29 N. E.
R. 888 ; Cummings v. Foss, 40 Ill. Ap. 523 ; Craft v. McCon-
oughy, 79 Ill. 346 ; The People v. Chicago Gas Trust Co., 130
Ill. 268 ; Emery v. Ohio Candle Co., 47 Ohio, 320 ; Hoffman
v. Brooks, 23 Am. Law Reg. 648 ; Collins v. Locke, L. R. 4
Ap. Cas. 674 ; Salt Co. v. Guthrie, 35 Ohio, 666 ; De Witt
Wire Cloth Co. v. New Jersey Wire Cloth Co., 16 Daly, 529 ;
Strait v. Harrow Co., 18 N. Y. Sup. § 24 ; Arnot v. Coal Co.,

68 N. Y. 558; Pittsburg Carbon Co. v. McMillin, 119 N. Y. 46; Judd v. Harrington, 19 N. Y. Sup. 413; Richardson v. Buhl, 77 Mich. 632; Lumber Co. v. Hayes, 76 Cal. 387; Pacific Factor Co. v. Adler, 90 Cal. 110; India Bagging Association v. Koch, 14 La. An. 168; Ry. v. Southern Pacific Ry., 6 So. R. 888; Clancey v. Salt Mfg. Co., 62 Barb. 407; Hilton v. Eckersley, 6 E. & B. 66; Gibbs v. Gas Co., 130 U. S. 396; Nav. Co. v. Winsor, 20 Wall. 64; Cotton Oil Co. v. Adoue, 19 S. W. 274; Stanton v. Allen, 5 Denio, 434; Hooker & Woodward v. Vandewater, 4 Denio, 349; Anderson v. Jett, 12 S. W. R. 670; Ferry Co. v. R. R., 5 Mo. Ap. 347; Stewart v. Transportation Co., 17 Minn. 472; Atchenson v. Mallon, 43 N. Y. 149; Rannie v. Irvine, 7 M. & G. 969.

In the cases in which combinations have been upheld by the courts, it was apparent from the contracts themselves that they did not tend to create a monopoly or put an end to competition; and the cases below, cited by appellant, demonstrate this: Skrainka v. Scharinghausen, 8 Mo. Ap. 522; Ontario Salt Co. v. Merchants Salt Co., 18 Grant's Ch. 540; Collins v. Locke, L. R. 4 App. Cas. 674; Central Shade Roller Co. v. Cushman, 143 Mass. 353; U. S. v. Trans-Missouri Freight Ass'n, 53 Fed. R. 440.

Where the combination is against public policy and void, the law will not attempt to adjust differences which arise out of the transactions which it condemns, even though the proceeds or profits of the unlawful combination may be in the hands of the parties to it: Texas & P. Ry. v. Southern Pac. Ry. Co., 6 So. R. 888; Brooks v. Martin, 2 Wall. 70; Norton v. Blinn, 39 Ohio, 145; Armstrong v. Toler, 11 Wheat. 258; Snell v. Dwight, 120 Mass. 16; Cummings v. Foss, 40 Ill. Ap. 523; Coal Co. v. Coal Co., 68 Pa. 173.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 14, 1894:

The conclusions of fact found by the learned court below were amply justified by the record. "It cannot be gainsaid that the object of this combination is to enable the forty-five brewers of Philadelphia, individuals, firms and corporations, who have entered into it, to regulate and control the sale and price of beer within the city of Philadelphia and the county of Camden, N. J. It certainly is a combination in restraint of

trade, tending to destroy competition and create a monopoly in an article of daily consumption."

The appellants, however, conceding these to be the facts, insist that the contract was not within the prohibition of public policy because the restraint was but partial. "Contracts in partial restraint of trade which the law sustains are those which are entered into, by a vendor of a business and its good will, with his vendee, by which the vendor agrees not to engage in the same business within a limited territory, and the restraint, to be valid, must be no more extensive than is reasonably necessary for the protection of the vendee in the enjoyment of the business purchased. But, in the present case, there is no purchase or sale of any business, nor any other analogous circumstances giving to one party a just right to be protected against competition from the other. All the members of the association are engaged in the same business within the same territory, and the object of the association is purely and simply to silence and stifle all competition as between its members. No equitable reason for such restraint exists:" More v. Bennett, 140 Ill. 69.

The test question, in every case like the present, is whether or not a contract in restraint of trade exists which is injurious to the public interests. If injurious, it is void as against public policy. Courts will not stop to inquire as to the degree of injury inflicted. It is enough to know that the natural tendency of such contracts is injurious.

So, it is obviously immaterial whether the restraint be general or partial. The application of the rule does not depend upon the number of those who may be implicated, nor the extent of space included, in the combination; but upon the existence of injury to the public. One combination, consisting of but part of those engaged in a given branch of trade, may amount to a practical monopoly; while another, less extensive in its scope, may, as well, bring disaster in its train. The difference lies only in degree, but equally forbids the aid of courts. In More v. Bennett, 140 Ill. 69, where a combination had been formed among some of the stenographers in the city of Chicago, Mr. Justice BAILY said: "True, the restraint is not so far-reaching as it would have been if all the stenographers in the city had joined the association; but, so far as it goes, it is of

precisely the same character, produces the same results, and is subject to the same legal objection. . . . We can see no legal difference between the restraint on competition which it now exercises, and that which it will exercise when it is in a position to dictate terms to all who are engaged in the business, and to all who may wish to obtain the services of stenographic reporters." So, no one can for a moment doubt that more serious injury would result to densely settled, than to a much larger district with scattered population. Thus a combination to raise the price of bread-stuffs would cause serious loss in a city, while it would be comparatively harmless in an agricultural state. " We can scarcely conceive," said Mr. Justice MARR, in Standard Cotton Oil Co. v. Adoue, 19 S. W. Rep. 274, " how mere territorial limits can be the controlling test in all instances of the legality of the restraints imposed upon the ordinary course of trade. The criterion may do very well when applied to the occupation or profession of one man or even a few individuals; for neither their labor, industry, business nor services may be so necessary to the public as not to be dispensed with without inconvenience or injury. It appears to us, however, that the case is very different in regard to trade in articles of prime necessity, or even of very frequent use, among a large number of persons in a given locality: " Hooker v. Vandewater, 4 Denio, 349; Stanton v. Allen, 5 Id. 434; More v. Bennett, 140 Ill. 69, 29 N. E. Rep. 888; Hilton v. Eckerley, 6 El. & Bl. 66; India Rubber Co. v. Koch, 14 La. Ann. 168; Salt Co. v. Guthrie, 35 Ohio, 666, and Coal Co. v. Coal Co., 68 Pa. 173, were all cases—and they show the trend of decisions in this country—in which combinations in restraint of trade were partial in respect of the number of persons implicated and territorial limits, and were yet held injurious to the public interests and therefore void as against public policy. The true test was the effect upon public interests.

So, if the natural tendency of such contracts is to injuriously affect public interests, the form and declared purpose are immaterial. Courts will not lend their aid in illegal transactions no matter how disguised. Thus where a contract, entered into by the grain dealers of a town, which on its face indicated that they had formed a partnership for the purpose of dealing in grain, but the true object of which was to form a secret combi-

nation which should stifle all competition and enable the parties to control prices, was held void on the ground of public policy : Crafts v. McConoughy, 79 Ill. 346 ; India Rubber Company v. Koch, supra, is to the same effect.

The appellants insist that restraint of trade in the necessaries of life only is within the prohibition of public policy. No standard has been furnished by which to ascertain what constitute these with reference to the general public. But, assuming that beer is not among them, it is equally within the reach of the rule. The law recognizes it as a commodity, regulates its sale, it is " an article of daily consumption," and the court should refuse to aid in any attempted imposition upon the public by means of illegal combinations. The fact that coal was " an article of prime necessity " was not mentioned as essential to the illegality of the combination which was involved in Coal Co. v. Coal Co., 68 Pa. 173, but was suggested, arguendo, as an aggravation of the injury done the public. The whole course of discussion there shows that injury to the public was regarded as the true test of illegality.

Appellants also insist that " equity will not permit the fund accumulated here to be locked up forever, or dishonestly appropriated by defendants," but will compel a settlement, according to good conscience, even with a partner in an illegal transaction, a fortiori with an assignee wholly innocent of participation in or knowledge of the alleged illegalities.

" The test, however," as was well said by the learned judge below, " is whether the plaintiff requires the aid of the illegal transaction to establish his case ; if the plaintiff cannot open his case without showing that he has broken the law, a court will not assist him : Swan v. Scott, 11 S. & R. 164 ; Coal Co. v. Coal Co., supra." " The objection," said Lord MANSFIELD in Holman v. Johnson, Cowp. 343, " that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff—by accident, if I may so say. The principle of public policy is this : Ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of ac-

tion upon an immoral or an illegal act. If from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of the law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would have the advantage of it, for where both are equally at fault, potior est conditio defendentis." As the bill here bears upon its face the evidence of the turpitude of the transaction out of which the plaintiffs' demand arises, it is plain upon this principle that the court must have refused its aid had the Enterprise Brewing Company itself been the beneficial claimant; and its assignees stand in no higher right. Notice of the character of the combination was in the channel of the assignees' title, and hence they are not "innocent of participation in, or knowledge of, the illegality" of the combination, and must be treated as having taken subject to the disabilities of their assignor: Chamberlain v. Barnes, 26 Barb. 160; Riddle v. Hall, 99 Pa. 116. It follows that there is no error in the decree, and it should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellants.