FOX SOLID PRESSED STEEL CO. v. SCHOEN et al.

(Circuit Court, W. D. Pennsylvania. December 8, 1896.)

1. INTERPRETATION OF CONTRACTS—MANUFACTURE OF CAR TRUCKS.

Plaintiff and defendants were making center plates for car trucks under different patents, and plaintiff besides was making a new kind of truck frame known as the "Pressed Metal Frame." Plaintiff, by contract, gave defendants an exclusive license to make center plates under plaintiff's patents, reserving only the right to make them for use with its own pressed metal truck frames. The contract further provided that defendants should not make truck frames, "or any part of such frames, when made of pressed metal." At the time of the contract defendants were making pressed metal parts of "diamond truck frames," and continued to do so for several years without objection from plaintiff. *Held* that, in view of the situation of the parties, and their practical construction of the contract, the latter clause was intended merely to prevent defendants from making pressed metal truck frames, or any parts thereof, and did not prevent them from making pressed metal parts of other kinds of truck frames.

2. SAME.

A truck bolster is not a part of a "truck frame," within the meaning of a contract, whereby a party agrees not to manufacture truck frames, or parts thereof, when made of pressed metal.

3. CONTRACTS IN RESTRAINT OF TRADE.

A contract between manufacturers, whereby, without any sale of the business of one to the other, one party is prohibited from manufacturing of pressed metal any parts of a diamond car truck frame, is void as an unreasonable restraint of trade.

This was a suit in equity by the Fox Solid Pressed Steel Company against Charles T. Schoen and the Schoen Manufacturing Company, arising out of a contract between the parties.

Cowen, Dickerson & Brown, for complainant.
Strawbridge & Taylor, for defendants.

ACHESON, Circuit Judge.    On and prior to October 10, 1891, the date of the written contract between the plaintiff, as party of the first part, and the defendants, as parties of the second part, both parties were engaged in the manufacture of center plates for car trucks under patents owned by them respectively; the plaintiff at Chicago, Ill., and the defendants at Pittsburgh, Pa. By the terms of the contract the plaintiff granted to the defendants the exclusive right to make center plates under the plaintiff's patents, and the defendants agreed to pay to the plaintiff $7\frac{1}{2}$ per centum of the gross selling price of all center plates sold by them; and it was stipulated that the plaintiff should have the right to make center plates "for application to pressed metal truck frames manufactured by it" upon the payment of a named royalty but should not otherwise engage

in the manufacture of center plates.    The contract contains this provision:

"It is further agreed that the parties of the second part will not engage, during the life of this agreement, in the manufacture of truck frames for moving vehicles, or any part of such frames, when made of pressed metal."

The present controversy grows out of a difference between the parties as to the meaning of this clause. The plaintiff contends that the clause prohibits the defendants not only from making pressed metal truck frames and parts of such frames, but also from making out of pressed metal any part of a truck frame, of whatsoever kind the truck frame may be. The defendants maintain that the prohibition is against the making of pressed metal truck frames and parts of a pressed metal truck frame. If the literal reading of the clause were determining, the plaintiff's construction might be entitled to preference. But in the interpretation of a particular clause of a contract the court is required to examine the entire instrument, and may also consider the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was made. Chicago, R. I. & P. Ry. Co. v. Denver & R. G. R. Co., 143 U. S. 596, 12 Sup. Ct. 479. Moreover, the practical interpretation by the parties of an ambiguous clause of a contract is entitled to great, if not controlling, influence (Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057); and such practical construction, though at variance with the literal meaning of the clause, will prevail (District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585). Let us apply these principles here, and see with what result. From an examination of the whole paper of October 10, 1891, it is very clear that its main purpose was to regulate the manufacture of center plates as between the parties. The clause in question is secondary and incidental. Its introduction at all into the paper would be inexplicable were it not that the plaintiff was engaged in the manufacture of pressed metal truck frames, as the contract itself discloses. That style of truck frame was peculiar, and was of comparatively recent origin, and of limited use. The truck in ordinary use was and is the diamond truck, 85 or 90 per centum of all railroad freight cars in the United States being provided therewith. The diamond truck frame and the pressed metal truck frame are entirely different constructions. The plaintiff was not engaged in the manufacture of diamond truck frames. Its business was the manufacture of pressed metal truck frames. The plaintiff was thus interested to avoid rivalry in that particular branch of business,—the manufacture of pressed metal truck frames and parts of such frames. The parties entered into the contract with the Fox pressed steel truck frame before them, and with reference to the plaintiff's manufacture thereof. To the extent, then, that the restrictive clause secured the plaintiff freedom from competition in the manufacture of pressed metal truck frames, and parts thereof, it may be regarded as having a basis in reason. But to carry the provision further would be unnecessary for the fair protection of the plaintiff and unreasonable. Again, at

the date of the contract the defendants were engaged in the manufacture of pressed metal parts of diamond truck frames, and thereafter the defendants continued such manufacture with the knowledge of the plaintiff's principal officials, and without objection. This course of manufacture by the defendants was acquiesced in by the plaintiff until about the time of the filing of this bill, on April 18, 1895. It is significant that the bill states that until February, 1895, the defendants had complied with the terms of the contract. The occasion for the filing of the bill was that in February, 1895, the defendants began making and selling a pressed steel truck bolster. Whether the truck bolster is any part of a truck frame is a contested point. Now, without discussing the evidence, it is enough for me to say that, influenced by the weight of the testimony of the practical experts, and from my inspection of the models, my conclusion is that the bolster is no part of a truck frame. Moreover, no truck bolster is used with a pressed metal truck frame. I am, then, quite unable to see how the plaintiff can justly claim that the manufacture of the bolster is within the prohibitory clause of this contract.

Upon the question of the proper construction of this clause, my opinion, under all the circumstances of the case, accords with the view upon which the defendants insist. But finally, if, as the plaintiff contends, this clause really interdicts the defendants' manufacture out of pressed metal of any part of a diamond truck frame, then the clause, in my judgment, is in unreasonable restraint of trade, and not enforceable. Navigation Co. v. Winsor, 20 Wall. 64; Gibbs v. Gas Co., 130 U. S. 396, 409, 9 Sup. Ct. 553, 557. The public interest is much promoted by the use of pressed metal parts in the repair or improvement of diamond truck frames. Now, the plaintiff's business is the manufacture of pressed metal truck frames, and the evidence shows that its manufacturing capacity is fully taxed to meet the demand for that class of truck frames. This prohibitory clause, it will be observed, is without limit as respects place. To enforce it by the injunction here sought would be to deprive the public of the defendants' needed industry, and this, too, without reasonable benefit to the plaintiff. The covenants in restraint of trade hitherto sustained have been those connected with the sale or purchase of a business and its good will, or some analogous subject-matter, where the restraint was no more extensive than was reasonably necessary for the protection of the covenantee. Nester v. Brewing Co., 161 Pa. St. 473, 481, 29 Atl. 102, 104. Here, however, there was no sale or purchase of any business relating to the manufacture of truck frames, and no circumstances existed to justify so sweeping a restriction as the plaintiff claims. Let a decree be drawn dismissing the bill, with costs.