BAILEY *v.* MASTER PLUMBERS.

(*Jackson.* August 15, 1899.)

1. TRUSTS AND MONOPOLIES. *Association of plumbers illegal, when.*

By-laws of a master plumbers' association, incorporated under Act 1875, Ch. 142, § 2, as a nonprofit concern, which punish, by penalties, competition among its members, and restrain their purchases of supplies and materials to a limited class of manufacturers, are illegal and void, both at common law and under our anti-trust statutes, as tending to stifle competition and enhance prices, and no action can be maintained by the association against its member to enforce such by-laws or to recover penalties for their violation. (*Post, pp. 101–123.*)

Act construed: Act 1875, Ch. 142, Sec. 2.

Code construed: §§ 2514 *et seq.*, 3185, 6622 (S.); § 1974, (M. & V.).

Cases cited and approved: 4 Denio, 349 (S. C., 47 Am. Dec., 258); 5 Denio, 434 (S. C., 49 Am. Dec., 282); 79 Ill., 346 (S. C., 22 Am. Rep., 171); 2 L. R. A., 1; 5 L. R. A., 386; 140 Ill., 69 (S. C., 15 L. R. A., 361); 83 Texas, 650 (S. C., 15 L. R. A., 598); 166 U. S. 290; 161 Pa., 473 (S. C., 24 L. R. A., 247.)

2. SAME. *General rule.*

The Courts, with practical unanimity, hold that contracts, agreements, arrangements or combinations, in whatever form or name, are contrary to public policy and void when they tend to impair competition in trade and to enhance prices to the injury of the public. (*Post, p. 106.*)

3. SAME. *Limited as to number of persons and territory.*

That the master plumbers' association, whose by-laws are assailed in this case, confined its operations to the city of Memphis and did not embrace all the master plumbers in that city does not relieve the by-laws of their vicious character or render them any the less illegal. (*Post, p. 114.*)

Cases cited and approved: 35 Ohio St., 672; 161 Pa., 473 (S. C., 24 L. R. A., 251); 140 Ill., 69 (S. C., 15 L. R. A., 364); 83 Texas, — (S. C., 15 L. R. A., 602); 37 L. R. A., 130.

Bailey *v.* Master Plumbers.

4. SAME. *Right to combine not inferred from individual freedom.*

The fact that all the members had, as individuals, an inherent legal right to purchase supplies and materials from any dealer or dealers they might choose did not justify the master plumbers' association in passing by-laws requiring them to purchase from a class of dealers that it named. The former is freedom, the latter restraint. (*Post, p. 120.*)

Cases cited and approved: 14 La. Ann., 164; 68 N. Y., 558; 68 Pa., 173; 5 L. R. A., 386; 166 U. S., 290; 4 Denio, 349; 5 Denio, 434; 79 Ill., 346; 161 Pa., 473.

Cited and disapproved: 19 R. I., 255; 54 Miss., 223.

5. SAME. *By-laws within anti-trust law.*

By-laws of a corporation intended and well calculated to prevent full and free competition in the purchase and sale of articles of legitimate traffic, and to influence the prices thereof, and thereby to injuriously affect trade and commerce, are such "contracts, arrangements, combinations," and trusts as are prohibited by our anti-trust statutes. (*Post, pp. 121, 122.*)

Code construed: §§ 3185, 6622 (S.).

6. CORPORATIONS. *No recovery under invalid by-law.*

A corporation cannot recover of its member a penalty for violation of a by-law void, as an illegal restraint of trade, although the member had indemnified himself, by illegally collecting the amount from another, as contemplated by the by-law. The corporation is *in pari delicto.* (*Post, pp. 114, 115.*)

Case cited and approved: Cowp., 443; 161 Pa., 473 (S. C., 24 L. R. A., 251); 37 L. R. A., 130.

7. SAME. *By-laws.*

A by-law of a corporation is invalid if not authorized by its charter, or if authorized alone by an illegal provision of its charter. (*Post, pp. 122, 123.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. J. S. GALLOWAY, J.

SMITH & TREZEVANT for Bailey & Co.

HENRY CRAFT for Association of Master Plumbers.

CALDWELL, J. "The Association of Master Plumbers of the City of Memphis" sued J. A. Bailey & Co. before a Justice of the Peace, to collect an alleged debt of $444. On appeal to the Circuit Court the presiding Judge tried the case without a jury, and pronounced judgment in favor of the plaintiff for the amount claimed.

The defendants have appealed in error to this Court, and, as they insisted below, here insist, that the demand is illegal, and that they owe the plaintiff nothing.

The plaintiff is a corporation, chartered as a non-profit association, under Sec. 2, Ch. 142, Acts of 1875 (Shannon's Code, Secs. 2514 *et seq.*), and organized by a majority of the plumbers in the city of Memphis, Tennessee.

Numerous by-laws were adopted for the government of the association, and some of them were amended from time to time, to meet the changing views of the members.

One of the amended by-laws, as recited in the president's testimony, was as follows: "Each member of the Association was required thereafter to report in open meeting each week what work he had done during the week, and if it developed that such work was done in competition with any

other member (such fact to be made known by the statement of such other member at the meeting at which the work was called out), the member having done the work was to pay into the treasury of the association a fixed sum, according to a schedule agreed upon and made a part of the by-law, namely, for each bath tub put in $7.50 was to be paid to the association; for each water closet a fixed sum," etc.

In accordance with the plain terms of this by-law the defendants, who were members of the association from the beginning, made weekly reports for some time, and were, by the secretary, charged on the books of the association with the sums fixed in the schedule for such parts of the work reported as were shown to have been done in competition with other members.

The charges so made (being $7.50 on each bath tub, $5 on each washstand, $5 on each water closet, $5 on each sewer connection, $3 on each boiler, $3 on each sink, $2 on each water connection, and $2 on each hydrant) aggregated $444, and constituted the sole basis of this action and of the judgment below.

Since the plaintiff's demand rests upon the by-law set out above and nothing else, the first logical step to be taken in the consideration of the case is to determine the legal effect of that by-law. Is it valid or invalid?

Its controlling feature, as is readily observed,

is the unconditional and inexorable requirement that all members of the association who engage in plumbing work in competition with other members, shall pay into the treasury of the association, upon that consideration alone, fixed sums of money for particular kinds of work, which sums in each instance must amount to a large per centum of the price charged. In other words, and more briefly stated, all members doing such competitive work are imperatively required to pay a large tax, or tariff, thereon to the association. That requirement, however phrased, tends unmistakably and inevitably to one, or both, of two unlawful results—(1) the destruction of free and natural competition among members, (2) the arbitrary and unreasonable increase of prices to customers.

The tax, or tariff, so imposed by the association is in the nature of a penalty, visited upon members who shall successfully bid against other members on work appertaining to the plumbing business; and, in the nature of things, the member, who is always conscious of the fact that he must bear that burden and pay that tribute if he gets the job, may be expected to refrain from bidding altogether, or to indemnify himself by adding a corresponding sum to the price he would otherwise charge the customer for the same work.

Though the by-law does not in terms require the member doing competitive work to increase

the price he would otherwise exact of the customer, such increase is its natural tendency and effect, as would readily be supposed from its scope, and as is conclusively demonstrated by this record.

The president of the association testified that "usually he had added this amount (that fixed by the schedule of the by-law in question) to the price of such work as he thought he was bidding on in competition with others, but that so far as the rule of the association was concerned, he was at liberty to fix his own price, and do the work at a loss if he saw fit. He did not know whether, as a general thing, the members of the association added the charges to the price fixed for their work or not, but he supposed that it was usually done whenever the member thought the work was to be done upon competitive bids."

Other members gave testimony on the same subject. One of them said: "The practice of the members was this. When a customer would come in to buy an article, a tub for instance, it would be assumed that he would get prices from other members. This would, therefore, be understood as a competitive job, which the member would have to report. He would figure the cost, add his legitimate profit, the whole amounting say to $30, and to that he would add the tariff of $7.50 on tubs, and charge the customer $37.50." Another one said: "The members would add the

tariff to their regular charges and pay it to the association;" and still another one said that "he usually added the amount to be paid the association to the price of work on which he bid in competition, but that there was no rule requiring it done. If he ever failed to do it, it was because he forgot it." No witness testified to a different course of business, or mentioned a single instance in which the customer was not required to bear the burden of this tax, or tariff, by paying a price enhanced to that extent.

Though influential in both particulars, this by-law is not shown to have reduced competition among the members of the association so much as it enhanced prices. In the latter respect it exerted a very large and most hurtful influence upon the public. The arbitrary and unreasonable enhancement in prices was rendered easy, and consequently the more widely harmful and oppressive, by the fact that most of the plumbers in the city of Memphis were members of the association, and that an imperative ordinance of the municipality, as well as the dictates of health and comfort, required all inhabitants to procure and use many of the things for whose sale and construction the association exacted the tax, or tariff, from its members.

The provision is obviously an unreasonable restraint upon trade, and being so, it is contrary to public policy, and void under the common law.

It injuriously affects matters of prime importance and legal necessity to the community at large by the impairment of competition on the one hand and the enhancement of prices on the other hand; and, consequently, no supposed obligation resting upon it is capable of enforcement in a Court of justice.

The Courts are practically unanimous in holding that contracts, agreements, arrangements, or combinations, in whatever form or name, are contrary to public policy and void when they tend to impair competition in trade and to enhance prices, to the injury of the public.

The cases in which the principle has been applied are numerous. Reference to a few of them will illustrate its scope and application. It was made the controlling rule of decision in *Hooker* v. *Vandewater*, 4 Denio, 349 (S. C., 47 Am. Dec., 258), and *Stanton* v. *Allen*, 5 Denio, 434 (S. C., 49 Am. Dec., 282), where the plaintiffs were unsuccessful in suits to enforce alleged monetary obligations which arose under a mutual agreement between several transportation companies to equalize business and establish and maintain uniform rates among themselves as carriers of freight on the Erie and Oswego canals; in *Craft* v. *McConoughy*, 79 Ill., 346 (S. C., 22 Am. R., 171), where one of several grain dealers who had entered into a secret agreement to suppress competition and control the grain trade of Rochelle,

Bailey *v.* Master Plumbers.

Illinois, was denied a recovery from the others of his proportionate part of the alleged profits of the combination; in the Sugar Trust Case (*People of the State of New York* v. *North River Sugar Refining Co.,* 2 L. R. A., 1, and 5 L. R. A., 386), where the charter of the defendant was adjudged subject to forfeiture because it and nearly all of the other sugar refining companies in the United States had entered into an agreement, whose tendency was to prevent competition and to control prices; in *More* v. *Bennett,* 140 Ill., 69 (S. C., 15 L. R. A., 361), where it was held that an association of stenographers was illegal, and its rules nonenforcible, because one of its objects was to restrain competition among its members in bidding for stenographic work; in *Texas Standard Cotton Oil Co.* v. *Adoue,* 83 Texas, 650 (S. C., 15 L. R. A., 598), where alleged profits, arising under an agreement of certain cotton oil companies, were denied the plaintiffs because the natural and necessary consequences of the agreement were to prevent competition among the parties thereto, and to control prices to the injury of the public; in *United States* v. *Trans-Missouri Freight Association,* 166 U. S., 290, and *United States* v. *Joint Traffic 'Association,* 171 U. S., 505, where agreements of numerous railroad companies, entered into for their mutual protection by establishing and maintaining reasonable rates, rules, and regulations on all freight traffic

in their combined territory, were adjudged to be illegal, as in restraint of trade, destructive of competition, and tending to monopoly; in *Nester* v. *The Continental Brewing Co.,* 161 Pa., 473 (S. C., 24 L. R. A., 247), where the complaintants were refused a decree for their proportionate share of profits made by the Brewers' Association of Philadelphia, whose object was to stifle competition among its members in the sale of beer, by fixing a minimum price at which they should sell.

It will further emphasize the principle to quote some of the language used in deciding some of these cases.

In *Hooker* v. *Vandewater* the Court said: "It is a familiar maxim that competition is the life of trade. It follows that whatever destroys, or even relaxes, competition in trade, is injurious, if not fatal, to it," and that an agreement having that effect "was therefore illegal and void." 47 Am. Dec., 260.

The opinion in *Craft* v. *McConoughy,* near its close, uses these words: "So long as competition was free, the interest of the public was safe. The laws of trade, in connection with the vigor of competition, was all the guaranty the public required, but the secret combination created by the contract destroyed all competition and created a monopoly against which the public interest had no protection." 22 Am. R., 174.

In the sugar trust case this language occurs: "But all the cases, ancient and modern, agree that a combination, the tendency of which is to control prices, is detrimental to the public and consequently unlawful." 2 L. R. A., 40.

Mr. Justice Peckham, in delivering the opinion of the majority of the Court in the case of *United States* v. *Trans-Missouri Freight Association,* said: "The claim that the company has the right to charge reasonable rates, and that, therefore, it has the right to enter into a combination with competing roads to maintain such rates, cannot be admitted. The conclusion does not follow from an admission of the premise. What one company may do in the way of charging reasonable rates is radically different from entering into an agreement with other and competing roads to keep up the rates to that point. If there be any competition the extent of the charge for the service will be seriously affected by that fact. Competition will itself bring charges down to what may be reasonable, while in the case of an agreement to keep prices up, competition is allowed no play; it is shut out, and the rate is practically fixed by the companies themselves, by virtue of the agreement, so long as they abide by it." 166 U. S., 339.

The same distinguished Judge, in his opinion in the later case of *United States* v. *Joint Traffic Association,* remarked: "We do not think that

when the grantees of this public franchise are competing railroads, seeking the business of transportation of men and goods from one State to another, that ordinary freedom of contract in the use and management of this property requires the right to combine as one consolidated and powerful association for the purpose of stifling competition among themselves, and of thus keeping their rates and charges higher than they might otherwise be under the laws of competition. And this is so, even though the rates provided for in the agreement may for the time be not more than are reasonble. They may easily and at any time be increased."

In the Stenographers' case the Court observed: "True, the restraint is not so far-reaching as it would have been if all the stenographers in the city had joined the association, but, so far as it goes, it is of precisely the same character, produces the same results, and is subject to the same legal objection." 15 L. R. A., 364.

In *Nester* v. *The Continental Brewing Co.,* the Court said: "The test question in every case like the present, is whether or not a contract in restraint of trade exists which is injurious to the public interests. If injurious, it is void, as against public policy. Courts will not stop to inquire as to the degree of injury inflicted. It is enough to know that the natural tendency of such contracts is injurious. So, it is obviously immaterial

whether the restraint be general or partial. The application of the rule does not depend upon the number of those who may be implicated, or the extent of space included in the combination, but upon the existence of injury to the public. One combination, consisting of but part of those engaged in a given branch of trade, may amount to a practical monopoly, while another, less extensive in its scope, bring disaster in its train." 24 L. R. A., 251.

In its essential facts the present case is very similar to that of *Milwaukee Masons' and Builders' Association* v. *Neizerowski,* decided by the Supreme Court of Wisconsin. Certain by-laws of the association suing in that case, required that all bids of its members should be first submitted to a committee of the association, which should decide who was the lowest bidder, that he should then add at least 6 per cent. to the amount submitted to the committee and present only the increased figures as his bid to the person desiring to build, and that the member so securing the contract should pay to the association the amount of the increase on his bid as submitted to the committee. The defendant, who was a member of the association, submitting his bid to the contemplated committee, made a contract for the erection of the Gesu Church in Milwaukee, at the price of $71,000. The association afterwards demanded of him 6 per cent. on the $71,000, and he finally

executed his note therefor. Part of that note, $2,289, remaining unpaid, the association sued him for its collection, and was repelled from Court upon the ground that the by-laws were illegal and void because in restraint of trade.

The Court, in its opinion, said: "The manifest purpose of the private by-laws was, by means of the combination thus effected, to suppress fair and free competition in bidding for building contracts in Milwaukee, and by such combination and method of bidding, upon its face apparently fair and free from objection, but, in fact, unfair and delusive, to compel owners to pay for the erection of buildings the sum of 6 per cent. in excess of what they would be otherwise obliged to pay for them, if fairly let to the lowest bidder uninfluenced by such combination. It seems to us that the restraint put upon the rights of the proprietors by the provisions of these by-laws or rules, as well as the entire scheme thus disclosed, is contrary to public policy, and therefore void. . . . . While all reasonable stipulations and means to protect labor or trade are laudable, we must hold that the means here sought to be employed are such as the law will not sanction. We must consider what may be done under such an agreement and the result which it will necessarily produce. As already pointed out, the operation of this combination, under its private by-laws, is to suppress free and fair com-

petition in bidding for contracts, and by delusive and deceptive means members of the association are enabled to exact from owners a higher price for buildings than they would otherwise have to pay." 37 L. R. A., 129, 130.

There the member doing work in competition with another member was bound to pay a certain sum to the association; the same is true here. There the member was required in positive terms to exact that sum from the customer; here such is the natural and proven effect.

The distinction between the two cases is one without a difference in legal consequences. There the place for the burden was expressed; here it is implied. In each case the purpose to tax the customer for the benefit of the association and its members is plainly indicated. The provision there and the provision here are alike in restraint of trade, contrary to public policy, illegal and void. Both of them violate the general law, in that they tend unmistakably and inevitably to the destruction of free competition in important lines of trade and to the enhancement of legitimate prices therein.

In all the foregoing cases, in which suits were brought for the recovery of money, the demands of the plaintiffs were adjudged unlawful and non-collectible, because based upon agreements, contracts, or by-laws in restraint of trade. The plain-

19 P—8

tiff in the present case must be repelled for a like reason.

It can avail nothing against this conclusion that the membership of the association involved in this litigation does not include all plumbers in the city of Memphis, and that the by-law in question relates alone to business done in that city. Being in restraint of trade and injurious to the public, as heretofore shown, the by-law is contrary to public policy, illegal, and void, notwithstanding the fact that the restraint is partial in respect to the persons implicated and the territorial limits affected. It is not the number of persons participating in the by-law, or the extent of the territory included, but the injury to the public in that territory, however restricted, that characterizes the interruption of trade as illegal. *Central Ohio Salt Co.* v. *Guthrie*, 35 Ohio St., 672; *Nester* v. *The Continental Brewing Co.*, 161 Pa., 473 (S. C., 24 L. R. A., 251); *More* v. *Bennett*, 140 Ill., 69 (S. C., 15 L. R. A., 364); *Texas Standard Oil Co.* v. *Adoue*, 83 Texas (S. C., 15 L. R. A., 602); *Milwaukee Masons' and Builders' Association* v. *Neizerowski*, 37 L. R. A., 130.

Nor is the plaintiff's case made better by the fact that the defendants, with a view of complying with the by-laws, may have wrongfully demanded and received from their customers the amount sued for. In that aspect the plaintiff and the defendants stand upon the same ground—both

being wrongdoers, and neither having any just claim to relief against the other. Both being equally at fault, the condition of the defendants is the better, and they gain only because the plaintiff must lose. The plaintiff is repelled, not out of consideration for defendants, but because its action rests upon an illegal by-law, whose enforcement is forbidden by public policy. It is for the protection of the Courts, and in the interest of the public rather than of the defendant that such suits are dismissed. *Holman* v. *Johnson,* Cowp., 443; *Nester* v. *The Continental Brewing Co.,* 161 Pa., 473 (S. C., 24 L. R. A., 251); *Milwaukee Masons' and Builders' Association,* 37 L. R. A., 130.

The association now before the Court has other by-laws which further illustrate and demonstrate its hurtful and unlawful tendency. Two of them are as follows:

"Art. 9. No member of this association shall purchase any supplies from any supply house, manufacturer or dealer in plumbing materials who does not comply with the rules and requirements of this association.

"Art. 10. No member shall buy material of any kind from a jobber who buys material from a manufacturer who sells plumbing or gas-fitting material to anyone in our city who is not a member of our association."

Manifestly these provisions were intended to re-

strain all members of the association in their pur-
chases of "supplies" and "material," and all deal-
ers, who sell to them, in their sales; and, at the
same time, to embarrass nonmembers and "boy-
cott" dealers who sell to them. The restraint is
fourfold. It operates upon members and upon
dealers who sell to them, upon nonmembers and
upon dealers who sell to them; and in each of
the four particulars it interrupts that freedom in
trade to which all of them were otherwise en-
titled, and which the public is interested to have
them enjoy. All members and all nonmembers
were of right entitled to buy from any and all
dealers at their election, yet the members are re-
stricted to dealers who sell to none but members,
and nonmembers are restricted to dealers who sell
to none but nonmembers; and, likewise, all deal-
ers were of right entitled to sell to all persons
who desire to purchase, yet those of them who
sell to members are forbidden to sell to others,
and those who sell to others are thereby deprived
of sales to members. Thus, and to this extent,
the public loses the benefit of fair and free com-
petition, which it is always entitled to have.

These by-laws virtually divided the trade in
plumbing materials and supplies for Memphis into
two main parts, in the nature of combinations,
one of them being represented by members of the
association and dealers who sell to them alone,
and the other being represented by nonmembers

and dealers who sell to them alone; and, thereby, the two classes are intended to be arrayed against each other; not in fair and free competition, but with a view to the utter demolition of the latter class and the entire control of the trade by the former class.

The underlying thought is the destruction of all competition with nonmembers by driving them out of the business, and the acquisition of the whole trade for members, whose competition among themselves and whose prices to customers are subject to the illegal rule already considered.

It is entirely true, as in effect observed in *McCauley Bros.* v. *Tienery,* 19 R. I., 255, and in *Bohn Manufacturing Co.* v. *Hallis,* 54 Miss., 223, that, in the first instance, each member of the association had a perfect legal right to buy material and supplies exclusively from any dealer or dealers he might choose, and each dealer had an equal right to select members for his customers and to confine his sales to them only. These were inherent rights, which no competitor was authorized to dispute, no Court empowered to control or curtail. But, in our opinion, it does not follow from this undoubted freedom of individual member and of individual dealer, that all of the members may, as ruled in those cases, lawfully enter into a general and unlimited agreement in the form of by-laws that they and all of them will make their purchases from only such

dealers as will sell to members exclusively. The premise does not justify the conclusion. The individual right is radically different from the combined action. The combination has hurtful powers and influences, not possessed by the individual. It threatens and impairs rivalry in trade, covets control in prices, seeks and obtains its own advancement at the expense and in the oppression of the public.

The difference in legal contemplation, between individual right and combined action in trade is seen in numerous cases.

Any one of several commercial firms engaged in the sale of India cotton bagging had the right to suspend its sale for any time it saw fit. Yet an agreement between all of them to make no sales for three months without the consent of the majority "was palpably and unequivocally a combination in restraint of trade." *India Bagging Association* v. *Koch*, 14 La. Ann., 164. Any one of several companies had the right to sell the whole or only a part of its output to only such persons, in only such territory, and at only such prices as it pleased, yet it was inimical to the interests of the public and unlawful for them to combine and agree that those matters should be determined and controlled by an agency jointly created for that purpose. *Arnot* v. *P. & E. Coal Co.,* 68 N. Y., 558; *Morris Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa., 173. The same

Bailey v. Master Plumbers.

was held to be true, as to the individual company and the combined companies, respectively, in The Sugar Trust Case, previously cited, 2 L. R. A., 33, and 5 I. R. A., 386.

So, one railroad company has the unquestioned right to charge reasonable rates for transportation, but it is not lawful for competing companies to mutually bind themselves to maintain those rates. *United States* v. *Trans-Missouri Freight Association,* 166 U. S., 290; *United States* v. *Joint Traffic Association,* 171 U. S., 505. Individual boat proprietors may establish rules and rates for the conduct of their separate business, but the law does not allow them to form a combination, and, by mutual agreement, establish joint rules and rates. *Hooker* v. *Vandewater,* 4 Denio, 349; *Stanton* v. *Allen,* 5 Denio, 434. One grain dealer is perfectly free to decide for himself what price he will offer for grain, but he is not allowed to enter into an agreement with the other grain dealers of his town, and thereby fix the price that all of them shall offer. *Craft* v. *McConoughy,* 79 Ill., 346.

A single brewer may fix his own price for the beer he sells. Nevertheless it is unlawful for an association of brewers to regulate the sales of its members. *Nester* v. *The Continental Brewing Co.,* 161 Pa., 473. Many other cases, to the same effect in principle, might easily be cited were their citation deemed at all necessary.

The mere fact that every plumber in the city of Memphis had the legal right originally to purchase supplies and materials from any dealer or dealers he might choose, did not justify the association in the passage of by-laws requiring its members to buy from that class of dealers it saw fit to name. The two things are not the same, but antagonistic. The former is freedom, the latter restraint.

Only members of the association are technical parties to these by-laws, and, as such, subject to the punishment of expulsion for their violation, nevertheless, all persons engaged in plumbing work in the city of Memphis and all dealers in plumbing material and supplies, wherever located, who sell to them, are necessarily affected by their natural operation, to the extent and in the manner already indicated; and all of those dealers who agree to sell to members of the association only, by that agreement and its observance, become parties to the scheme and assume the same attitude before the law as if they had been technical parties to the by-laws and agreed to observe them in the first instance.

The proof in the record discloses the fact that several dealers out of the State ratified the by-laws, so far as relating to themselves, and repeatedly refused to sell material and supplies to nonmembers for no other reason than that doing so would be a violation of the by-laws, and sub-

ject them, as dealers, to a "boycott" by the association.

This action of important dealers was the consummation of a vital part of the complex scheme; and the arrangement so accomplished, as the natural and intended result of these by-laws, is an illegal restraint on trade, a combination and trust in limited form, tending to stifle competition and to create a monopoly in a particular line and community.

By-laws with such capabilities, import, and design are clearly obnoxious to the common law, as well as violative of our statutes (Shannon's Code, 3185 and 6622), which forbid and declare unlawful, null and void, "all trusts, pools, contracts, arrangements, or combinations," or corners, or other devices, that are intended to destroy or prevent, or that have a tendency to destroy or prevent "full and free competition in the production, manufacture, or sale of any article of legitimate traffic;" or that "are designed or tend to fix, regulate, limit," reduce, or increase the price of such article, or to create a monopoly or a corner therein, or that may in any manner "injuriously affect the legitimate trade and commerce of the country."

Whether these by-laws be regarded as a contract, an arrangement, a combination, or a trust, one or all, and we think they partake of the nature of all of them, there can be no reasonable doubt

that they were intended and are well calculated to prevent full and free competition in the purchase and sale of articles of legitimate traffic, to influence the prices thereof, and, thereby, to injuriously affect trade and commerce within the territory contemplated.

Finally, all the by-laws herein considered, that relating to competitive bidding for work and the two concerning purchases of material and supplies, are wholly inoperative and void, because not authorized by the charter.

The action of a non-profit association, like that of all other corporations, must be limited to the powers enumerated in the charter, plus those necessarily implied from the object of incorporation. Authority to adopt by-laws of such import as these is not expressed in the plaintiff's charter, nor does it arise by implication. Hence it does not exist.

The object of the association was recited in the preamble of its charter, and restated in its constitution in substantially the same language, as follows:

"Art. 11. The Association is organized for sanitary, commercial, and social purposes, and has for its special objects the advancement of the trade in all of the latest discoveries of science appertaining to sanitary laws; to promote and combine the intelligence and influence of members for the protection of the trade against imposition,

injustice, or encroachments upon our common rights and interests; encouraging inventions and improvements in sanitary appliances; fostering an interchange of thought, and eliciting and communicating for the benefit of each member, the best talent and the result of experience and ability of all; to promote amiable relations with employes on the basis of mutual interests and equitable justice to both journeymen and master plumbers; to encourage national and State legislation for the furtherance of the interests of sanitary laws, and secure for the members of the trade equitable treatment in their dealings with manufacturers and dealers in supplies."

Nothing is here found from which to imply authority to tax competition among members, or to curtail their freedom in respect of desired purchases. These thoughts are not even remotely suggested. No more are they essential elements of the object expressed.

It is well to observe, in conclusion, that if the charter were so construed as to authorize the adoption of by-laws like these, the charter itself would, by that construction and to that extent, be brought into legal condemnation as in excess of the powers contemplated by the legitimate act under which it was granted. and by which its efficient scope must be measured.

Reversed and dismissed.